**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                              No. CR 19-2606 JB

LAMBERTO MEDRANO-ALVAREZ

    Defendant.

### MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on the Defendant's Sentencing/Disposition Memorandum, filed June 24, 2022 (Doc. 87)("Objection"). The primary issue is whether the Court should apply a 4-level sentencing enhancement under United States Sentencing Guidelines ("U.S.S.G.") § 2A2.2(b)(2)(B), because Defendant Lamberto Medrano-Alvarez used a dangerous weapon by throwing his tennis shoes at a federal corrections officer. The Court concludes that throwing a tennis shoe does not constitute using a dangerous weapon, because, on its own, a tennis shoe is not an instrument capable of inflicting death or serious bodily injury. Accordingly, the Court will sustain the Objection and will not apply U.S.S.G. § 2A2.2(b)(2)(B)'s 4-level enhancement.

### PROCEDURAL BACKGROUND

    On March 23, 2022, Medrano-Alvarez pled guilty to one count of Assault Upon a Federal Officer, in violation of 18 U.S.C. §§ 111(a)(1) and (b). See Plea Agreement at 1-10 (dated March 23, 2022), filed March 23, 2022 (Doc. 78). The United States Probation Office ("USPO") calculates Medrano-Alvarez' total offense level to be 23, which includes a base-offense level of 14 pursuant to U.S.S.G. § 2A2.2, a 4-level enhancement under U.S.S.G. § 2A2.2(b)(2)(B) for

using a dangerous weapon, a 3-level enhancement under U.S.S.G. § 2A2.2(b)(3)(A) for the victim sustaining bodily injury, a 2-level enhancement under U.S.S.G. § 2A2.2(b)(7) for Medrano-Alvarez being convicted under 18 U.S.C. §§ 111(b) or 115, and a 3-level reduction for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b).  See Presentence Investigation Report ¶¶ 17-28, at 6-7 (dated May 3, 2022), filed May 3, 2022 (Doc. 81)("PSR").  The USPO states that Medrano-Alvarez has a criminal history category of VI and calculates his U.S.S.G. imprisonment range to be 92 to 115 months.  See PSR ¶ 127, at 29.

Medrano-Alvarez objects to USPO's recommendation that the Court apply U.S.S.G. § 2A2.2(b)(2)(B)'s 4-level enhancement for using a dangerous weapon.  See Objection at 2-4. Medrano-Alvarez argues that he did not use a dangerous weapon, because "tennis shoes are not normally categorized as an instrument capable [of] inflicting death or serious bodily injury," and do not "closely resemble such an instrument."  Objection at 3.  Medrano-Alvarez states that, "[a]lthough injury did result," he "did not expect injury to result."  Objection at 4.

The United States responds, noting that it does not object to the Court applying U.S.S.G. § 2A2.2(b)(2)(B)'s 4-level enhancement, but admitting that "the facts of this case are at the outer bounds of conduct for which the dangerous weapon enhancement might apply."  United States' Sentencing Memorandum at 2, filed June 13, 2022 (Doc. 84)("Response").  The United States argues that, because U.S.S.G. § 2A2.2 refers to U.S.S.G. § 1B1.1 cmt. n.1's dangerous weapon definition, "shoes may or may not be dangerous weapons in a given case depending on the defendant's intent."  Response at 2.  According to the United States, if a defendant "intended to commit bodily injury, then shoes are a dangerous weapon."  Response at 2.  The United States contends that, here, the evidence "leans toward finding" that Medrano-Alvarez threw a shoe "with intent to cause bodily injury," because Medrano-Alvarez threw two shoes "in succession," "one of

the shoes hit the victim in the face," and Medrano-Alvarez "has [a] long history of hurting other people."  Response at 2.

The USPO responds, maintaining that it recommends that the Court apply U.S.S.G. § 2A2.2(b)(2)(B)'s 4-level enhancement.  See Addendum to the Presentence Report, filed July 7, 2022 (Doc. 88)("Addendum").  The USPO states that U.S.S.G. § 1B1.1 cmt. n.1's definition "includes any instrument that is not ordinarily used as a weapon (e.g., a car, chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury," and that boots, shoes, tennis shoes, a taser, and plastic pitcher all have been used as dangerous weapons for U.S.S.G. § 2A2.2's purposes.  Response at 2.  According to the USPO, Medrano-Alvarez "thew out a second tennis shoe," which "hit the victim in the face" and caused a bloody nose.  Response at 2.  The USPO notes that the "injury was obvious since there was bleeding, being an injury, it was painful, and the victim was medically evaluated."  Response at 2.

## ANALYSIS

Throwing a tennis shoe does not constitute using a dangerous weapon, because, on its own, a tennis shoe is not an instrument capable of inflicting death or serious bodily injury.  U.S.S.G. § 2A2.2(b)(2)(B) states that a court should apply a 4-level enhancement if "a dangerous weapon (including a firearm) was otherwise used."  U.S.S.G. § 2A2.2(b)(2)(B).  U.S.S.G. § 2A2.2(b)(2)(B) cmt. n.1 defines "dangerous weapon" as "the meaning given that term in § 1B1.1, Application Note 1, and includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent

to commit bodily injury."   U.S.S.G. § 2A2.2 cmt. n.1.   U.S.S.G. § 1B1.1 cmt. n.1 defines

"dangerous weapon" as

> (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object
> that is not an instrument capable of inflicting death or serious bodily injury but (I)
> closely resembles such an instrument; or (II) the defendant used the object in a
> manner that created the impression that the object was such an instrument (e.g. a
> defendant wrapped a hand in a towel during a bank robbery to create the appearance
> of a gun).

U.S.S.G. § 1B1.1 cmt. n.1.  An object "not ordinarily used as a dangerous weapon can become a

dangerous weapon depending on the manner of its use."  United States v. Quiver, 80 F.3d 1269,

1272 (10th Cir. 2015).  Some objects, however -- a taser, for example -- "need not depend on a

manner of use to achieve the designation of a 'dangerous weapon' under § 2A2.2(b)(2)(B)."

United States v. Quiver, 80 F.3d at 1273.  A court does not need to make a finding of specific

intent to cause bodily injury to apply § 2A2.2(b)(2)(B)'s 4-level enhancement.  See United States

v. Washington, 552 F. App'x 827, 831-82 (10th Cir. 2014)(unpublished).[1]  An object that is "not

inherently dangerous can constitute a dangerous weapon if the defendant used the object to

---

[1]United States v. Washington is an unpublished opinion, but the Court can rely on an
unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th
Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive
value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its disposition,
> we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United
States v. Washington, United States v. McIntosh, 232 F. App'x 752 (10th Cir. 2007)(unpublished),
and United States v. Hatch, 490 F. App'x 136 (10th Cir. 2012)(unpublished), have persuasive
value with respect to a material issue, and will assist the Court in its disposition of this
Memorandum Opinion.

augment the force of the assault, in a manner capable of inflicting serious bodily injury." <u>United States v. Swallow</u>, 891 F.3d 1203, 1205 (9th Cir. 2018).

Here, although "'almost anything can count as a dangerous weapon,'" Medrano-Alvarez's tennis shoes are not a dangerous weapon. <u>United States v. Serrata</u>, 425 F.3d 886, 910 (10th Cir. 2005)(quoting <u>United States v. Tissnolthos</u>, 115 F.3d 759, 763 (10th Cir. 1997)). "[T]ennis shoes are not inherently dangerous." <u>United States v. Swallow</u>, 891 F.3d at 1205. Medrano-Alvarez's shoes are not dangerous weapons under U.S.S.G. § 1B1.1 cmt. n.1, because there is no evidence that his shoes are "capable of inflicting death or serious bodily injury," "closely resemble such an instrument," or that Medrano-Alvarez used the shoes "in a manner that created the impression that" his shoes are "such an instrument" U.S.S.G. § 1B1.1 cmt. n.1. Medrano-Alvarez threw one of his tennis shoes at R.P., a corrections officer at the Cibola County Correctional Center, through the "food port" of his cell door when R.P. was "conducting a med-line with a nurse." PSR ¶ 10, at 5-6. R.P. dodged the first shoe and then moved closer to the food port to close it, and then used "his OC chemical agent canister to spray" Medrano-Alvarez. PSR ¶ 10, at 5-6. Medrano-Alvarez responded to being sprayed by reaching out of the food port and throwing his second tennis shoe, which hit R.P. in the face and caused his nose to bleed. <u>See</u> PSR ¶ 10, at 5-6.

Under U.S.S.G. § 2A2.2 cmt. n.1, an instrument is a dangerous weapon only if it is "an instrument capable of inflicting death or serious bodily injury," or "resembles" such an instrument, or "used . . . in a manner that created the impression that" it is such an instrument. U.S.S.G. § 1B1.1 cmt. n.1. By its terms, U.S.S.G. § 2A2.2 cmt. n.1's "and includes" language does not add an intent requirement to objects that are "not ordinarily used as a weapon." U.S.S.G. § 2A2.2 cmt.

n.1. [2]  Nevertheless, even if it includes an intent requirement, it does not require applying U.S.S.G.

§ 2A2.2(b)(2)(B)'s 4-level enhancement, because there is insufficient evidence that Medrano-

---

[2]The phrase in U.S.S.G. § 2A2.2 cmt. n.1 "and includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury," clarifies and adds examples, but, by its terms, does not encompass other items that U.S.S.G. § 1B1.1 cmt. n.1 does not already cover. U.S.S.G. § 2A2.2 cmt. n.1.  If it encompasses other items that U.S.S.G. § 1B1.1 cmt. n.1 does not already cover, then U.S.S.G. § 1B1.1 cmt. n.1's definition of "dangerous weapon" is narrower than U.S.S.G. § 2A2.2 cmt. n.1's definition, and U.S.S.G. § 2A2.2 cmt. n.1's phrase "has the meaning given that term in U.S.S.G. § 1B1.1 cmt. n.1" does not mean what it says.  U.S.S.G. § 2A2.2 cmt. n.1.

The United States Court of Appeals for the Tenth Circuit is not clear whether U.S.S.G. § 2A2.2 cmt. n.1's definition is broader than U.S.S.G. § 1B1.1 cmt. n.1's definition.  In United States v. Hatch, the Tenth Circuit does not read explicitly an intent requirement into U.S.S.G. § 2A2.2 cmt. n.1, but suggests that the "and includes" language expands the dangerous weapon definition beyond U.S.S.G. § 1B1.1 cmt. n.1.  See United States v. Hatch, 490 F. App'x 136, 139 (10th Cir. 2012)(unpublished).  The United States Court of Appeals for the Fifth Circuit, by contrast, imposes an objective intent requirement if the instrument is not ordinarily used as a weapon.  See United States v. Velasco, 855 F.3d 691, 693 (5th Cir. 2017).  The United States Court of Appeals for the Ninth Circuit does not impose an intent requirement, but states that an instrument – like a tennis shoe -- is a dangerous weapon if it is "used in a manner capable of producing serious bodily injury."  United States v. Swallow, 891 F.3d at 1205.

Although the Court does not agree with the Tenth Circuit's suggestion in United States v. Hatch, 490 F. App'x at 139, and in United States v. McIntosh, 232 F. App'x 752, 754 (10th Cir. 2007)(unpublished), that U.S.S.G. § 2A2.2 cmt. n.1's definition is broader than U.S.S.G. § 1B1.1 cmt. n.1's definition, the Court agrees that, because "an object not ordinarily used as a dangerous weapon can become a dangerous weapon depending in the manner of its use," United States v. Quiver, 805 F.3d at 1273, tennis shoes qualify as dangerous weapons if they are used to "inflict greater harm than" is possible with "bare feet," United States v. Swallow, 891 F.3d at 1205.  The Court reaches this conclusion because, in that circumstance, the shoes are instrumental in allowing a defendant to "commit [an] assault in a manner capable of producing seriously bodily injury." United States v. Swallow, 891 F.3d at 1205.  Tennis shoes are not inherently dangerous weapons. See United States v. Swallow, 891 F.3d at 1205.

U.S.S.G. § 2A2.2 cmt. n.1 as a whole does not require an intent to commit bodily injury, see United States v. Washington, 552 F. App'x 827, 831-82 (10th Cir. 2014)(unpublished), but the Tenth Circuit is not clear whether intent is required if the object is not "ordinarily used as a weapon," U.S.S.G. § 2A2.2 cmt. n.1.  Because imposing an intent requirement either would read an intent requirement into U.S.S.G. § 1B1.1 cmt. n.1 or would suggest that U.S.S.G. § 2A2.2 cmt. n.1 does not mean what it says, the Court will not impose an intent requirement into U.S.S.G. § 2A2.2 cmt. n.1's definition.  Even if, however, U.S.S.G. § 2A2.2 cmt. n.1 requires a defendant have intent to commit bodily injury, it would not change the Court's conclusion here, because there is insufficient evidence that Medrano-Alvarez intended his shoes to cause bodily injury.

Alvarez intended to cause R.P. bodily injury, as opposed to disrupt his routine or cause him to drop whatever he was holding.  Medrano-Alvarez reached his arm out of the food port, which suggests he either could not see where he was throwing or had reduced control over his throw.  See PSR ¶ 10, at 5-6.  Further, Medrano-Alvarez maintains that he thew his shoe "at the door of his cell, where one would not reasonably expect a corrections officer to place his face in the small opening for delivery of medication without opening the door."  Objection at 3.

Although shoes can be dangerous weapons, concluding that Medrano-Alvarez's shoes are dangerous weapons would lead to absurd consequences.  In contrast to Medrano-Alvarez' situation, in United States v. McIntosh, the United States Court of Appeals for the Tenth Circuit agreed that steel-toed boots are dangerous weapons when they are used to kick someone "in the back and the face," resulting in the victim not being able to see or hear because of swelling and blood in her eyes and ears.  United States v. McIntosh, 232 F. App'x 752, 754 (10th Cir. 2007)(unpublished).  The victim in United States v. McIntosh had "multiple fractures of her facial bones" and "[o]ne bruise on her back appeared to bear the outline of a boot."  United States v. McIntosh, 232 F. App'x at 754.  The victim took pain medication for a month after the attack.  See United States v. McIntosh, 232 F. App'x at 754.  Similarly, in United States v. Hatch, the Tenth Circuit concludes that tennis shoes are a dangerous weapon when an attacker uses them to stomp repeatedly on an intoxicated victim's head with both the heel and toe of the shoe.  See United States v. Hatch, 490 F. App'x 136, 139 (10th Cir. 2012)(unpublished).  The Tenth Circuit observes that the defendant loses her left shoe, stops kicking the victim, goes to retrieve her shoe, and then "'immediately uses her left foot to kick the victim in the head once more,'" meaning that the shoes "'are important to her to be able to hurt the victim.'"  United States v. Hatch, 490 F. App'x at 139 (quoting record).  By contrast, Medrano-Alvarez's shoes are nothing more than projectiles.  The

shoes do not make Medrano-Alvarez' attack more lethal, nor do they enable Medrano-Alvarez to harm R.P. more severely than he otherwise would without shoes. The shoes do not enable Medrano-Alvarez to "augment the force" of his attack or make his attack more severe. United States v. Swallow, 891 F.3d at 1205. Rather, the shoes themselves are the attack. If Medrano-Alvarez's shoes are dangerous weapons, then Medrano-Alvarez receives a higher sentence under the U.S.S.G. for throwing a shoe through a hole in the door than he would for aiming a fierce punch at the officer's nose through the food port. The USPO's interpretation renders a shoe an inherently dangerous weapon. Further, the USPO's interpretations would risk concluding that the defendant in United States v. Hatch would receive § 2A2.2(b)(2)(B)'s 4-level dangerous weapon enhancement even if she were wearing only a right shoe while kicking the victim with her bare left foot, because the right shoe was "involved in the offense with the intent to commit bodily injury." U.S.S.G. § 2A2.2 cmt. n.1. Further, if a prisoner's tennis shoes are dangerous weapons, then every prisoner wears dangerous weapons daily, and a frustrated prisoner who kicks a prison guard would receive a higher U.S.S.G. sentence than a prisoner who carefully removes his shoe before kicking a guard. Shoes by themselves are not dangerous weapons; it matters how the shoes are used. The Court is not willing to draw such subtle distinctions. Although tennis shoes, in other situations, can be dangerous weapons, Medrano-Alvarez's tennis shoes are not dangerous weapons.

**IT IS ORDERED** that the Objection in Defendant's Sentencing/Disposition Memorandum, filed June 24, 2022 (Doc. 87), is sustained.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M. M. Uballez
    United States Attorney
Jack Burkhead
Matthew T. Nelson
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Michael Alarid, Jr.
The Alarid Law Firm P.C.
Albuquerque, New Mexico

   *Attorneys for the Defendant*